# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF KANSAS

**ADRIAN M. REQUENA,**

          **Petitioner,**

**v.**                                                 **Case No.  07-3058-JWL**

**RAY ROBERTS, et al.,**

          **Respondents.**

## MEMORANDUM & ORDER

Petitioner Adrian Requena is currently before this court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2554 (Doc. #1).  In his petition, Mr. Requena alleges that (1) there was insufficient evidence to support his conviction for rape; (2) the district court erred in failing to instruct the jury on the meaning of "incapable of giving consent"; (3) the district court erred in refusing to consider Mr. Requena's motion for a new trial; (4) the district court erred in failing to conduct an evidentiary hearing on his claim of ineffective assistance of counsel; and (5) that he received ineffective assistance of counsel.  After thoroughly reviewing the parties' motions, briefs, and the underlying record, the court finds that the evidence clearly establishes Mr. Requena is entitled to no relief.  As such, his habeas application is denied.

## I.      Background

J.C., the victim in this case, suffered from a number of ailments, including multiple sclerosis, fibromyalgia, osteoarthritis, degenerative joint disease, mitrovalve prolapse, gout, and alcoholism.  At the times relevant to this case, J.C. took various medications, including Prozac, Baclofen, Clonazepam, Albuterol tablets and inhaler, Ritalin, Remeron, Amitriptyline, and MS Contin.  In August of 1998, J.C. was living with Susan Andrey due to J.C.'s deteriorating condition and her need for assistance with driving, bathing, and other daily activities.  Mr. Requena met both Ms. Andrey and J.C. through Alcoholics Anonymous (AA) meetings.  J.C. testified at trial that she considered Mr. Requena to be her friend and that he was helpful to her, but there was no physical intimacy or sexual relationship between them.  J.C. also testified that during the course of their friendship, Mr. Requena would frequently drive her places, feed her cat, and work on her son's car.

On March 26, 1999, J.C. and Ms. Andrey were playing bingo at the American Legion when J.C., who had taken a Remeron tablet, fell asleep at the bingo table.  Ms. Andrey took J.C. home and helped her get to bed; Ms. Andrey left J.C. in her bedroom wearing a t-shirt, sweatshirt, jeans, and socks.  The next thing J.C. remembered was Ms. Andrey asking her, "What was Adrian doing naked in your bed this morning?" to which J.C. replied "Adrian? Are you sure you don't mean Robert?"[1]  J.C. went back to sleep and later woke up and realized she had on only her T-shirt, although she had gone to bed in jeans, a T-shirt, a sweatshirt, socks, and

---

[1]J.C. testified at trial that Robert was someone to whom she had been somewhat sexually attracted to at one point.

underwear. She also realized she had general soreness in her vaginal area and more soreness than usual in her thigh area.

After talking about the incident with Ms. Andrey, J.C. decided to report it to the police and have a rape exam conducted at the hospital. During the rape exam and an interview with a police officer, J.C.'s memory began resurfacing and she recalled having sex with a man named Robert and that he had performed oral sex on her. She further recalled having her legs around the man and, feeling the back of his head and saying "Oh, Robert, you didn't cut your braid off, did you?" J.C. later realized that the man could not have been Robert because he lived in a halfway house.

Ms. Andrey testified that when she went to sleep around midnight, J.C. was in her own room alone, fully clothed. Ms. Andrey awoke later in the night and noticed that J.C.'s door was half open; when she looked in, she saw Mr. Requena, naked, lying next to J.C. Ms. Andrey also testified that from January 1999 through March 1999, J.C.'s condition began to deteriorate. She began sleeping considerably more, suffered from bouts of diarrhea, couldn't stay awake, and couldn't remember talking to people. Ms. Andrey also testified that during this time period that she observed J.C.'s condition deteriorate, Mr. Requena also had contact with J.C. such that Ms. Andrey opined that he "knew [J.C.'s] abilities at that time."

Mr. Requena was charged with one count of rape in violation of K.S.A. § 21-3502(a)(1)(C) and one count of aggravated burglary in violation of K.S.A. § 21-3716. Mr. Requena was convicted by a jury of the rape charge but was acquitted on the aggravated burglary

charge.  He was subsequently sentenced to 256 months imprisonment.[2]  Mr. Requena appealed

his conviction and sentence to the Kansas Court of Appeals (KCA), raising the following

grounds: (1) there was insufficient evidence for the rape conviction;  (2) the trial court erred in

failing to instruct the jury on the meaning of "incapable of giving consent"; and (3) the trial court

erred in refusing to consider Mr. Requena's motion for a new trial and in failing to conduct an

evidentiary hearing on his claim of ineffective assistance of counsel.  The KCA affirmed the

conviction, *State v. Requena*, 30 Kan. App. 2d 200, 202-03, 41 P.3d 862 (2001) (*Requena I*) and

the Kansas Supreme Court denied review.

Mr. Requena then brought a motion for post-conviction relief pursuant to K.S.A. § 60-

1507 alleging ineffective assistance of trial counsel.  Mr. Requena then appealed the trial court's

dismissal of that claim, arguing that (1) the trial court erred in failing to make findings of fact

and conclusions of law on all of the issues presented and failing to hold an evidentiary hearing;

(2) his trial counsel offered ineffective advice regarding, among several other bases, the

applicable sentencing range during the course of plea negotiations; and (3) trial counsel's

ineffectiveness resulted in cumulative errors requiring reversal of his conviction.  The KCA

concluded Mr. Requena was not entitled to relief on those grounds, *Requena v. State*, 14 P.3d

1095, 2006 WL 3740879 (Kan. App. 2006)(*Requena II*) and the Kansas Supreme Court denied

---

[2]There was an error with respect to Mr. Requena's sentencing.  The state mistakenly charged
Mr. Requena with a level 2 person felony for the rape but the crime was actually a level 1 person
felony.  The sentencing guideline range for Mr. Requena with regard to a level 2 person felony was
270-256-242 months.  As for a level 1 person felony, the Kansas sentencing guidelines called for a
presumptive sentence within the 322 to 356 month range.  The state noted the error and at re-
sentencing, Mr. Requena received the same sentence of 256 months that he originally received.

4

review.  Subsequently, Mr. Requena filed the federal habeas petition currently before this Court.

## II.    Legal Standard

Because Mr. Requena filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the provisions of the AEDPA govern this case.  *Jackson v. Ray*, 390 F.3d 1254, 1259 (10th Cir. 2004).  The AEDPA "circumscribes a federal habeas court's review of a state-court decision."  *Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (quotations omitted).  This court cannot grant federal habeas relief unless the state courts's adjudication of the claims either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (citing 28 U.S.C. § 2254(d)).

The Supreme Court has determined that the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings.  *Bell v. Cone*, 535 U.S. 685, 694 (2002). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412-13.  A state court's failure to cite the proper Supreme Court precedent does not dictate that the state court's decision is contrary to clearly established federal law; in fact, "the state court need not even be aware of our precedents; 'so long as neither the reasoning nor the result of the state-court decisions contradicts

them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). "Under the 'unreasonable application' clause, . . . the relevant inquiry is not whether the state court's application of federal law was incorrect, but whether it was 'objectively unreasonable.'" *Anderson*, 327 F.3d at 1153 (citing *Williams*, 529 U.S. at 409); *see also Wiggins v. Smith*, 539 U .S. 510, 520 (2003)(same). Legal principles are "clearly established" for purposes of AEDPA review when the holdings of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *See Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004).

The AEDPA also substantially restricts the scope of federal habeas review of state court findings of fact. This Court must presume "that factual determinations made by the state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence." *Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003)(citing § 2254(e)(1)); *see also Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002)). "This presumption does not extend to legal determinations or to mixed questions of law and fact." *Id*. (citing *Herrera v. Lemaster*, 225 F.3d 1176, 1178-79 (10th Cir. 2000)). "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.'" *Id*. (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)). "Ultimately, . . . review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for evaluating state-court rulings." *Anderson*, 327 F.3d at 1152.

## III.   Analysis

The court has determined that an evidentiary hearing is not appropriate in this case

because Mr. Requena has failed to show that "his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief." *Anderson v. Attorney General of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005). As explained below, the record, briefs, and pleadings clearly establish that Mr. Requena is not entitled to federal habeas corpus relief. As such, Mr. Requena's application for federal habeas relief is denied.

A.      *Sufficiency of the Evidence*

Mr. Requena first argues that there was insufficient evidence to convict him of rape because, according to him, J.C. did not lack the capacity to consent and, if she did, he was unaware that she lacked such capacity. When evaluating the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution, and habeas relief may only be granted if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Spears v. Mullin*, 343 F.3d 1215, 1238 (10th Cir. 2003)(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Although the KCA did not specifically cite to *Jackson*, it identified and applied the appropriate standard from *Jackson* as identified and described in *State v. Mason*, 268 Kan. 37, 986 P.2d 387, 389 (1999).[3] Thus, the court is limited to determining whether the KCA's adjudication of Mr. Requena's claim was an unreasonable application of *Jackson*. *Bell v. Cone*, 535 U.S. 697, 698 (2002).

Mr. Requena was convicted of rape under K.S.A. § 21-3502(a)(1)(C), which provides in pertinent part that rape occurs "when the victim is incapable of giving consent because of mental

---

[3]The Tenth Circuit has specifically stated that *State v. Mason* is an appropriate enunciation of the *Jackson v. Virginia* standard. 214 F. App'x 784, 787 (10th Cir. 2007).

deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by the offender or was reasonably apparent to the offender." *Requena I*, 30 Kan. App. 2d at 202-03, 41 P.3d 862 (2001).  The KCA concluded that, "from the evidence presented, the jury could have concluded that because of the effects of J.C.'s various medications and because of her worsening medical condition, these circumstances prevented her from consenting to sex." *Id.*  at 204, 41 P.3d 862.  The KCA further concluded that there was sufficient evidence to indicate that "Mr. Requena was aware of J.C.'s confused mental condition or that because of her condition, it was reasonably apparent to him that she did not have the capacity to consent to having sex with him." *Id.* at 205, 41 P.3d 862.

The jury could reasonably infer that J.C. was incapable of consenting based on the evidence at trial, which established the various physical and psychological ailments she suffered from and the numerous medications she was taking.  Moreover, the jury could reasonably infer from the evidence that Mr. Requena was aware that J.C. had medical issues.  Ms. Andrey testified that Mr. Requena had been with J.C. at various times while her condition was deteriorating in the early months of 1999.  Furthermore, J.C. testified that Mr. Requena saw her on numerous occasions during that time, as he drove her places, fed her cat, and worked on her son's car.  Accordingly, the court concludes that when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found guilt beyond a reasonable doubt.  *See Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir.2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).  Thus, the court finds that

the KCA reasonably applied controlling Supreme Court precedent and Mr. Requena is not entitled to federal habeas relief on this issue.

B.    *Jury Instruction*

Mr. Requena next argues that the trial court should have instructed the jury on the meaning of "incapable of giving consent." At trial, Mr. Requena failed to request such an instruction. The Tenth Circuit has indicated that a petitioner must overcome a high burden to demonstrate constitutional error arising from an allegedly erroneous jury instruction:

> In a habeas proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden. A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial. The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in this proceeding is not whether the instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process. An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. The degree of prejudice from the instruction error must be evaluated in the context of the events at the trial.

*Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995)(internal citations and quotations omitted).

9

The KCA held that the failure to instruct the jury on the definition of "incapable of giving consent" was not clearly erroneous because the term is "one which people of common intelligence and understanding can comprehend and is not a term that requires definition." *Requena I*, 30 Kan. App. 2d at 206, 41 P.3d 862.   The court agrees that the phrase "incapable of giving consent" is one which people of ordinary intelligence can understand without further definition.  The court further notes that Mr. Requena's argument that the phrase left too much room for the jury to speculate is merely hypothetical; there is no indication in the record that the jury had trouble understanding the phrase.  Moreover, Mr. Requena only complains of an omission, which is less likely prejudicial than a misstatement of the law.  *Maes*, 46 F.3d at 985.  Thus, the court finds that Mr. Requena cannot overcome the high burden facing him on this issue.  Nothing in the record indicates that the instructions were improper or that the fundamental fairness of the trial was so undermined by the trial court's failure to instruct the jury regarding the meaning of the phrase that Mr. Requena's due process rights were violated.  Accordingly, the court concludes that the KCA's resolution of this issue was not contrary to nor an unreasonable application of federal law and Mr. Requena is not entitled to habeas relief with respect to this claim.

C.    *Motion for a New Trial*

Mr. Requena next argues that the trial court erred in refusing to consider his untimely motion for a new trial.  Under Kansas statute, a motion for a new trial based on anything other than newly discovered evidence "must be filed within 10 days after the verdict or finding of

guilty or within such further time as the court may fix during the 10-day period." K.S.A. § 22-3501. Mr. Requena was convicted on December 2, 1999; however, the trial court gave Mr. Requena until January 18, 2000, to file a motion for a new trial. Mr. Requena then filed a pro se motion for a new trial on February 15, 2000. In evaluating this claim, the KCA determined that the trial court did not abuse its discretion in refusing to consider Mr. Requena's untimely motion for a new trial. *Requena I*, 30 Kan. App. 2d at 207, 41 P.3d 862. Moreover, after evaluating the merits of Mr. Requena's untimely filed motion and concluding that he had received effective assistance of counsel, the court opined that even if the trial court had abused its discretion, it did not commit reversible error in denying the motion for a new trial. *Id*. at 207-09, 41 P.3d 862. As explained below, the court finds that Mr. Requena is not entitled to federal habeas relief with respect to the claims that formed the basis of his motion for a new trial (ineffective assistance). The court therefore finds that the KCA's conclusion that the district court did not commit reversible error in denying Mr. Requena's motion for a new trial is not contrary to nor an unreasonable application of Supreme Court precedent. Mr. Requena is entitled to no federal habeas relief with respect to this claim.

## D.    *Post-Conviction Evidentiary Hearing*

Mr. Requena argues that he is entitled to federal habeas relief because the trial court erroneously denied his request for an evidentiary hearing in connection with his state post-conviction motion alleging ineffective assistance of counsel. As the Tenth Circuit has consistently held in the past, however, an attempt by a petitioner to challenge state "post-

conviction procedures on their face and as applied to him [fails] to state a federal constitutional claim cognizable in a federal habeas proceeding." *Steele v. Young*, 11 F.3d 1518, 1521, 1524 (10th Cir. 1993). *See also Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998)(holding that the state court's refusal to grant a post-conviction hearing was not cognizable on federal habeas corpus "because the constitutional error [the petitioner] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration); *Beeman v. Ortiz*, 161 F. App'x 767, 768-69 (10th Cir. 2006)(affirming district court's rejection of petitioner's challenge to the state court's denial of a post-conviction evidentiary hearing because a claim of constitutional error directed at state post-conviction proceedings was not cognizable on federal habeas review)(citing *Sellers*, 135 F.3d at 1339); *Graves v. Boone*, 1999 WL 1079626 at *2 (10th Cir. Nov. 30, 1999)("Mr. Graves' challenges to Oklahoma's post-conviction procedures do not amount to federal constitutional claims in a federal habeas action."); *Hopkinson v. Shillinger*, 866 F.2d 1185, 1218-19 (10th Cir. 1989) *overruling on other grounds recognized by Davis v. Maynard*, 911 F.2d 415-17 (10th Cir. 1990)("Several circuits have held that state postconviction proceedings may not be challenged in federal habeas corpus actions.")(collecting cases). Thus, the court concludes that Mr. Requena's claim that the trial court failed to provide him with an adequate evidentiary hearing in the state post-conviction proceeding does not warrant federal habeas relief and his petition is denied with respect to this claim.

E.    *Ineffective Assistance of Counsel*

The bulk of Mr. Requena's allegations relate to his claim that he was denied effective

assistance of trial and appellate counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  Under *Strickland*, Mr. Requena must first demonstrate that his counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688.  "In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).

Second, Mr. Requena "must show that counsel's deficient performance prejudiced the defense . . . ." *Le v. Mullin*, 311 F.3d 1002, 1024-25 (10th Cir. 2002).  Under this prong, Mr. Requena must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1025 (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bullock*, 297 F.3d at 1044.  The court "may address the performance and prejudice components in any order, but need not address both if [Mr. Requena] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).  In sum, Mr. Requena bears the burden to expose "'the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.'"  *Anderson v. Attorney General of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

A liberal interpretation of Mr. Requena's petition reveals allegations that his trial counsel

13

provided ineffective assistance by (1) asking Mr. Requena to write an affidavit of the night in question but never using it; (2) explaining to petitioner that he had just won a case and did not think the DA would let him win another; (3) failing to provide any information concerning rape shield; (4) giving Mr. Requena erroneous advice on the plea and sentencing; (5) failing to present evidence of the KBI lab report and failing to call a forensic scientist witness; (6) failing to object to testimony of J.C.'s alleged prior theft of narcotics during her employment; (7) telling Mr. Requena he would subpoena an independent physician but failing to do so; (8) failing to excuse the jury due to one potential juror's outburst; (9) failing to request an evaluation of J.C.'s mental capacity; and (10) failing to let Mr. Requena testify.

As an initial matter, the court notes that the allegations embodied in issues 1, 2, 3, 6, 9, and 10 are merely isolated statements with no factual support or explanation from Mr. Requena. Mr. Requena has not put forth any evidence indicating to the court how these alleged actions taken by his attorney prejudiced him. For example, with respect to allegation number 10, Mr. Requena has offered no evidence supporting his statement that his attorney prevented him from testifying. *See Underwood v. Massie*, 75 F. App'x 747, 748-49 (holding that petitioner's conclusory allegation that counsel "stood in the way" of her asserting her right to testify was insufficient to support her ineffective assistance of counsel claim). Moreover, he has failed to indicate to the court what his testimony would have been or how it would have affected the outcome of his trial. *See id.* (denying petitioner's ineffective assistance of counsel claim where petitioner did not attempt to show that the result of the trial would have been different had she testified).

14

Similarly, with respect to the allegations numbered 1, 2, 3, 6, and 9, Mr. Requena merely states the particular allegation as grounds for ineffective assistance, but points to no evidence in the record or otherwise indicating specifics of these alleged actions, or how they might have affected the outcome of the trial.  The court concludes that these conclusory allegations fail to establish an ineffective assistance claim and they do not entitle Mr. Requena to habeas relief. *See Snyder v. Addison*, 89 F. App'x 675, 681 (10th Cir. 2004)(conclusory allegations regarding counsel's failures are insufficient to prove ineffective assistance of counsel).   The court will, however, address the allegations numbered 4, 5, 7, and 8.

Mr. Requena argues that his trial counsel erred in giving him erroneous advice on plea and sentencing.  Specifically, Mr. Requena argues his trial counsel mistakenly showed him the 1999 guidelines but that he was actually sentenced under the 1998 guidelines, a fact he did not discover until the day before his sentencing.  Mr. Requena argues that this error, coupled with the erroneously charged level 2 person felony, resulted in him being told he would receive a sentence of 205 months when actually he was facing a guideline range of 322 to 356 months. Mr. Requena argues that, but for these errors,  he likely would have plead guilty, resulting in a shorter sentence.

The *Strickland* test explained above applies specifically to a claim of ineffective assistance during failed plea negotiations.  *See United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997). With respect to the first prong of the *Strickland* test, "effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered."  *Id*. "As for the prejudice prong, there must be a reasonable probability that but for incompetent counsel a

defendant would have accepted the plea offer and pleaded guilty." *Id*. (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The KCA evaluated the merits of this claim in denying Mr. Requena's § 60-1507 motion. *Requena II*, 2006 WL 3740879, at *2.  The court concluded he could not satisfy the prejudice prong of the analysis because he could not establish that but for his counsel's errors, he would have accepted the State's plea bargain offer.  *Id*. The KCA focused on the difference in the potential sentence faced under the level 2 felony (270 months) he was initially sentenced under and the level 1 felony maximum exposure Mr. Requena should have been charged under. *Id*. The court concluded that given the substantial sentence Mr. Requena faced even under the level 2 felony guideline range, and the generosity of the proposal he rejected, there was not a reasonable probability that he would have accepted the offer even if he had known that he faced a higher sentencing guideline range.  *Id*.

Mr. Requena, however, does not claim ineffective assistance of counsel based only the disparity created by the use of the incorrect felony levels.  Instead, Mr. Requena also asserts his counsel told him the maximum exposure he faced was 205 months (a figure not mentioned by the KCA), and his counsel showed him sentencing guidelines from the wrong year that indicated 205 months was the standard sentence and shows a 216 month maximum.  Mr. Requena claims had he known the maximum sentence was *not* 205 months he would have accepted the plea bargain offer of 27 months.  Accordingly, under the *Strickland* standard, this Court evaluates the

16

difference between the maximum exposure actually faced[4] and what Mr. Requena was told by his counsel, as opposed to the sentencing exposure difference resulting of the differing felony levels.

Under the first prong, this Circuit has held "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *U.S. v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). This case may be distinguishable from a mere estimation error, as showing a client the sentencing guidelines from the wrong year may rise to the level of negligence or a deviation from the professional norms standard. *See Fields v. Gibson*, 277 F.3d 1203, 1215 (10th Cir. 2002) ("A plea may be involuntary when an attorney materially misinforms the defendant of the consequences of the plea, e.g., by falsely alleging that promises or guarantees exist." (internal citation omitted)); *cf. Wellnitz v. Page*, 420 F.2d 935 (10th Cir. 1988) (holding counsel's "prediction, based upon his experience or instinct" that turns out to be erroneous "does not render a plea involuntary."). This Court, however, need not reach the issue because the defendant has failed to satisfy the second prong.

Under *Strickland*'s second prong, Mr. Requena must establish he was prejudiced by the ineffective assistance of counsel. He must, through objective evidence, prove there was a reasonable probability that he would have accepted the plea agreement had counsel performed

---

[4]Mr. Requena notes the maximum exposure he actually faced was 356 months based on the level 1 guidelines. During the resentencing stemming from this error, however, his sentence was not altered from the level 2 guidelines. Therefore, he never really faced a maximum exposure greater than the level 2 guidelines, 270 months.

in a constitutionally adequate manner. *Miller v. Champion*, 262 F.3d 1066, 1068 (10th Cir. 2001); *see also U.S. v. Riccardi*,  2007 WL 852360, *3-4 (D. Kan. March 16, 2007) (discussing relevant U.S. Courts of Appeals decisions, including Tenth Circuit unpublished opinions, concluding the Tenth Circuit requires "objective evidence"). "A great disparity between the actual maximum sentencing exposure" and that represented by counsel "provides sufficient objective evidence to establish a reasonable probability" that the plea offer would have been accepted. *See Gordon*, 156 F.3d at 381.  The issue, then, turns on whether there is a "great disparity" between the "actual maximum sentencing exposure" and the "sentence exposure represented" by Mr. Requena's attorney. *See id.* at 381.

Mr. Requena has not established prejudice because there is no great disparity.  Mr. Requena thought his exposure was 205 months, and rejected a twenty-seven month plea agreement, but instead, he faced 270 months.  In rejecting the twenty-seven month plea in consideration of the 205 month assumed maximum, Mr. Requena refused a sentence that was approximately thirteen percent of what he thought was the maximum. Comparing this to his actual maximum exposure, the plea agreement would have amounted to ten percent of the actual total maximum exposure, 270 months.  This Court concludes this three percent difference is not a "great disparity" sufficient to prove Mr. Requena would have accepted the plea agreement but for his counsel's alleged ineffective assistance.[5]  Because Mr. Requena offers no other objective

---

[5]This is distinguishable from the situation in *U.S. v. Gordon*, 156 F.3d 376, 377, 380-81 (2d Cir. 1998), in which the Second Circuit concluded there was a gross underestimation that was constitutionally deficient, as well that is was a great disparity sufficient to satisfy the objective evidence standard.  There, the defendant was offered a plea that would have resulted in a sentence of 92 through 115 months, which is almost 96 percent of what he thought was his maximum sentence,

evidence, the ineffective assistance of counsel claim on this basis fails.

Mr. Requena next alleges that his counsel was ineffective for failing to introduce a lab report as evidence and failing to call a forensic scientist with the KBI, Mary Koch, to present findings regarding the results of those reports.  On direct appeal, the KCA concluded the trial court did not abuse its discretion in light of the appropriate *Strickland* standard as set forth in *State v. Rice*, 261 Kan. 567, 599 932 P.2d 981 (1997).[6]  *Requena I*, 20 Kan. App. 2d at 208, 41 P.3d 862.  The court noted that Mr. Requena's rape conviction was based on the victim's incapacity to consent because of the effects of her diseases and medications, not based on force or fear, concluding it was doubtful the evidence could have shown the sexual act was consensual as opposed to nonconsensual.  *Id*.  The court held Mr. Requena's counsel did not perform below the level required by the Constitution under the *Strickland* standard.

This Court agrees that Mr. Requena has not provided evidence sufficient to show how counsel's performance fell below the constitutional standard or that he was prejudiced from the decisions not to introduce the report and related testimony.   While the report may have yielded information regarding DNA, identity was not a reasonable defense in this case because Mr.

_____

120 months.  His actual maximum exposure, 262 months, was a vast difference when compared to the alleged maximum in light of the potential plea offer–115 months equaled almost 44 percent of his actual maximum exposure.  There was a great disparity in being offered 96 percent of a maximum sentence versus 44 percent, unlike the small three percent difference in Mr. Requena's case.

[6]*See Rice*, 261 Kan. at 599, 932 P.2d 981 (quoting *Strickland*, 466 U.S. 668, 687 (1984)). *See also Uphchurch v. Bruce*, 333 F.3d 1158, 1164, n.4 (10th Cir. 2003) (stating the Kansas standard for ineffective assistance of counsel claims "mirrors the *Strickland* standard").  Thus, the AEDPA deferential standard applies despite the KCA's failure to cite to Supreme Court precedent. *See* Cook v. McKune, 323 F.3d 825, 830-831 (10th Cir.2003).

Requena admitted to a police officer, after an initial denial, he was present at J.C.'s house and in her bed that night.  The issue for the jury, instead, primarily turned on J.C.'s ability to consent. The KCA was correct when stating it is doubtful the lab report, had it been presented, would have been helpful to Mr. Requena's defense. Likewise, there is no reasonable probability the lab report would have altered the outcome of the case under the second prong of *Strickland*.  Thus, the state court's adjudication of the ineffective assistance claim on this basis was not contrary to or an unreasonable application of federal law, nor was there an unreasonable determination of the facts.  *See Williams*, 529 U.S. at 404-405.  Consequently, this Court cannot grant federal habeas relief on this basis.

Mr. Requena's final two specific bases alleged for his ineffective assistance of counsel claims were not discussed by the KCA in the direct appeal or in the state habeas appeal. This Court reviews de novo and denies these claims on the merits, which is the standard most favorable to petitioner, noting there might be other standards which might plausibly apply.[7]  *See,*

---

[7]In the state habeas appeal, the KCA discussed Mr. Requena's ineffective assistance of counsel claims.  It first noted, "we give deference to the trial judge's determination of trial counsel's performance," but did not indicate which of Mr. Requena's ineffective assistance of counsel claims it was addressing. *See Requena II*, 2006 WL 3740879 at *2.  The Court ended the same paragraph by stating the judgment from a direct appeal is res judicata to all issues raised and those issues that could have been raised.  *Id.* This latter statement seemingly is a reiteration of the trial court's denial of Mr. Requena's state habeas petition based on state supreme court precedent and Kansas Supreme Court Rule 183(c) that prohibits the use of state habeas as a substitute for direct appeal, unless there are changed or unusual circumstances. *See id.* at *1 (discussing the trial court's disposition of the case).  The court concluded the opinion holding "[t]he district court did not abuse its discretion in summarily denying Requena's . . . motion." *Id.* at *3.  As a result of these varying statements, it is difficult to determine whether: (1) the court summarily dismissed the claims on the merits by giving deference to the trial court's decisions, in Mr. Requena's previous proceedings, that counsel was effective, (2) the claims were dismissed on procedural grounds as the trial court had done, or (3) these specific ineffective assistance claims were never addressed by the state court despite being raised by Mr. Requena.

*e.g., Berry-Gurule v. Lucero*, 215 F.3d 1336 (10th Cir. 2000) (declining to address whether the petitioner's claim was adjudicated on the merits and, therefore, entitled to AEDPA deference because petitioner was not entitled to relief even under pre-AEDPA non-deferential standards).

The first of Mr. Requena's last two claims is that his counsel was "fraudulent" in telling him he was going to subpoena a doctor.  Mr. Requena states he was told a doctor was going to testify whether a lay person is capable of determining or recognizing the effects of specific medications, in rebuttal to Dr. Proctor's testimony, but provides no affidavit or other proof that this would have been the doctor's testimony.  Despite the absence of evidence that would prove the content of the testimony, this Court will briefly discuss and deny the merits of the claim.

Mr. Requena cannot prevail because he does not satisfy the second prong of the Strickland standard.  *Strickland*, 466 U.S. at 693.  In evaluating the prejudice prong, this Court must determine whether there was a reasonable probability that Mr. Requena, but for his

---

Under the first of these scenarios, the state court's denial of the claims would be entitled AEDPA deference.  *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003) ("Even if a state court resolves a claim in a summary fashion with little or no reasoning, we owe deference to the state court's result.").  Under the second view, this Court cannot review the claims if they were dismissed on independent and adequate state grounds.  *See, e.g., LaFevers v. Gibson*, 182 F.3d 705, (10th Cir.1999) (holding the federal habeas claim failed because it was raised for the first time in the state habeas petition and not in the second trial or on direct appeal, so the state court denied it because it was waived when not raised, which was an "independent and adequate state law ground"); *see also Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999) (discussing limitations of asserting independent and state procedural grounds as a basis to preclude federal habeas review, such as the state bearing the burden to assert the defense, when the claims are based upon ineffective assistance of counsel).  The last of these views is most favorable to petitioner because claims not addressed by the state court are not entitled to AEDPA deference.  *See Hooks*, 184 F.3d at 1223 ("In the absence of a state court adjudication on the merits we believe we must apply the standard of review that predated the recent amendments to § 2254. Prior to AEDPA, we reviewed de novo both pure questions of law and mixed questions of law and fact.").  Even under this non-deferential standard, Mr. Requena's claims are without merit.  Therefore, this Court will review de novo these last two claims.

counsel's failure to subpoena this doctor, would have been acquitted.  *See Foster*, 182 F.3d at 1184.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *See id.* quoting *Strickland*, 466 U.S. at 694.

This Court concludes that in looking at the totality of the evidence before the jury in this case, there is not a reasonable probability that a doctor testifying whether a lay person is capable of recognizing effects of medications would have altered the guilty verdict.  There is evidence from which the jury could reasonably infer that even if Mr. Requena could not recognize effects of specific medications, he knew or it was reasonably apparent to him[8] that J.C. had a condition and was on medications that rendered her incapable of consenting.  For example, Mr. Requena first denied being at J.C.'s house at all on the night the incident took place before admitting he was there and in J.C.'s bed.  Also, Mr. Requena stated to the officer, as related by the officer at trial, that he was aware of J.C.'s medical condition and that is why he helped her out, he was around J.C. frequently, and they were friends.  J.C.'s roommate also testified Mr. Requena was present to see J.C. experience symptoms and Mr. Requena knew of her condition.  Therefore, several pieces of evidence corroborated the inference that Mr. Requena was familiar with J.C.'s condition, medication, and symptoms.  There is not a reasonable probability that a doctor's theoretical testimony about the ability of lay people in general to recognize the effects of the medication would have changed the outcome in the face of specific, first-hand evidence of Mr.

---

[8]Knowledge of the condition or a condition reasonably apparent to the defendant was the standard given in the jury instructions for the relevant element of the crime charged.

Requena's actual experience with J.C. and his opportunity to assess her ability to consent.[9]

Mr. Requena's eighth claim was ineffective assistance of counsel when his counsel failed to question the remaining jurors about the effect of one potential juror's outburst. The voir dire was conducted off the record, but the state did not refute Mr. Requena's factual allegations. Mr. Requena alleges one potential juror stood saying "I have been raped." She began crying, and she was excused for cause. Mr. Requena asserts his counsel was ineffective by not asking each remaining juror if the outburst would affect their judgment.

This final claim also is evaluated under the two prong *Strickland* test. Mr. Requena's claim fails the first prong of this test that his counsel's decision must fall " below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 688. "An attorney's actions during voir dire are considered to be matters of trial strategy, which cannot be the basis of an ineffective assistance claim unless counsel's decision is ... so ill chosen that it permeates the entire trial with obvious unfairness." *Neill v. Gibson*, 278 F.3d 1044, 1055 (10th Cir. 2001) (internal citations and quotations omitted).

There are several cases in which a similar statement by a potential juror was held not to

---

[9]This is consistent with the state court's determination when considering the sufficiency of the evidence claim on direct appeal. Mr. Requena challenged the sufficiency of the evidence to establish he had knowledge of J.C.'s condition, and J.C. could have given the appearance of being fully conscious. However, the court dismissed this stating "Requena has failed to acknowledge a possible alternative scenario. It is entirely possible, based on the evidence presented, that Requena was aware of J.C.'s confused mental condition or that because of her condition, it was reasonably apparent to him that she did not have the capacity to consent to having sex with him." *State v. Requena*, 30 Kan. App. 2d 200, 205 41 P.3d 862, 866 (Kan. Ct. App. 2001). Similarly, this court concludes that there was not a reasonable probability that a doctor's testimony, as attested by Mr. Requena, would have changed the jury's verdict in the face of the totality of the prosecution's evidence.

affect the impartiality of a jury, showing that Mr. Requena's counsel's decision not to question the other jurors was not "ill chosen."  In a Tenth Circuit case involving an explosion at a trailer home a potential juror stated, "In the last five years my mobile home has been vandalized three times and I have had real estate burned."  *United States v. Buchanan*, 787 F.2d 477, 480 (10th Cir. 1986); *see also Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997) (rejecting ineffective assistance of counsel claim based upon attorney's decisions during voir dir).  The court explained "[t]he venireman's remark did not constitute an opinion on the defendant's guilt or the veracity of anyone involved in the case." *Buchanan*, 787 F.2d at 480. Just as in *Buchanan,* the potential juror's statement here was about a past personal experience with conduct similar to that at issue in the case, and there was nothing that reflected adversely on anyone involved in Mr. Requena's case.[10]   *See, e.g.*, *United States v. Tegzes*, 715 F.2d 505 (11th Cir. 1983) (explaining that where defendant was on trial for drug charges and juror stated in front of jury that his son overdosed on drugs before his eighteenth birthday, such comments "d[o] not constitute an opinion concerning guilt or innocence of the defendants, nor d[o they] relate to knowledge about facts, parties, or witnesses involved"). In light of these cases, Mr. Requena's counsel did not act below the level of professional norms nor affect the trial with "obvious

---

[10]While in *Buchanan* the trial judge admonished the members to disregard the remark, it is unknown whether, in Mr. Requena's case, the judge admonished the remaining panel members to disregard the statements at the time the potential juror was excused.  However, in the instructions at the beginning and close of trial, the jury was instructed to inform the bailiff if they experienced a personal problem or were in doubt about their rights or duties, consider only that which was supported by or admitted into evidence, and stated "[n]either sympathy nor prejudice should influence you."  Mr. Requena provides no indication these instructions were not followed. *See Ellis v. Oklahoma*, 430 F.2d 1352, 1356 (10th Cir.1970) "[I]t is presumed that jurors will be true to their oath and will conscientiously observe the instructions and admonitions of the court.").

unfairness" because arguments that such statements affect the impartiality of a jury have been routinely denied. *See generally United States v. Guzman*, 450 F.3d 627, 631 (6th Cir. 2006) (discussing cases involving effect of potential jurors' statements on impartiality of a jury, noting "[w]e found only one case where comments by potential jurors not directly related to the defendant in the case at bar rose to the level of presumed prejudicial error," referencing a case in which a potential juror made expert-like statements directly relevant to the case).

Also, Mr. Requena provides no evidence that this statement prejudiced him. *See id.* at 629 (discussing presumptions of juror impartiality and that jurors follow the trial court's instructions, while noting the defendant "presented no evidence of actual juror bias to overcome these presumptions"). While he states, the jurors should have been asked about the effect of the statement, he  never alleges the jurors were in fact affected by the statement, that the jury was in fact not impartial, nor that but for counsel's decision not to question those jurors, the outcome of the case would have been different. *See Strickland*, 466 U.S. at 693.  Mr. Requena's claim of ineffective assistance of counsel during voir dire is denied.



**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Requena's habeas petition (Doc. #1) is denied.

**IT IS SO ORDERED.**


Dated this 24th  day of August, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge